IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Mahtab Matin f/k/a Mahtab Matinkhosrawi, | : : : | |
| Plaintiff, | : : | CIVIL ACTION |
| v. | : : | |
| Fulton, Friedman & Gullace LLP, | : : | No. 11-2542 |
| Defendant. | : : | |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                              **NOVEMBER** 14**, 2011**

Presently before the Court is a Motion for Summary Judgment submitted by Defendant, the law firm Fulton, Friedman & Gullace LLP ("FF&G"). For the following reasons, FF&G's Motion will be granted.

**I.     FACTS**

This Fair Debt Collection Practices Act ("FDCPA") case stems from FF&G's attempt to collect a credit card debt from Plaintiff, Mahtab Matin f/k/a Mahtab Matinkhosrawi ("Matin"). At her deposition, Matin testified that she had a variable rate credit card with GE Money Bank ("GE"). (Mot. Summ. J., Corrected Statement of Undisputed Material Facts, Ex. 1, Pltf.'s Dep. Tr. 16:4-9, 47:11-17) (hereafter, "Pltf.'s Dep. Tr."). Matin further testified that she is unable to recall what she purchased with the credit card. (Id. at 33:10-16.) Matin also testified that she lost her job and was unable to make any payments on the amount due on her account. (Id. at 49:3-9.) In 2009, GE executed a Bill of Sale with Midland Funding, LLC ("Midland") for the sale of Matin's account. (Id., Ex. 2.) GE delivered Matin's account to Midland on or about June

28, 2010. (Id.) The balance on Matin's account as of the date of sale was $9,180.40. (Id., Ex. 3.)

Midland placed Matin's account for collection with FF&G, a law firm, in late December of 2010. (Id., Ex. 4 ¶ 5.) Upon receiving the account, attorney David Galloway, Esquire, ("Galloway") an employee of FF&G, reviewed Matin's account and pertinent information, including "her address, the amount due, the date of last payment, interest accrued to date along with the interest rate assigned to the account." (Id. ¶ 6.) It was Galloway's practice to reject accounts if it appeared that the debt could not be legally pursued. (Id. ¶ 7.) On the other hand, if it appeared that the debt could be legally pursued, Galloway would place the account on a "suit track," meaning that FF&G intended to file suit against the account holder if the account holder refused to "make arrangements to resolve the account." (Id. ¶ 8.) Galloway determined that Matin's account met all the criteria for placement on the "suit track" and "it was intended that a lawsuit would be commenced against her if she refused to make arrangements to satisfy the debt." (Id. ¶ 9.)

On December 28, 2010, FF&G sent a collection or "dunning" letter to Matin at her home address. (Id., Ex. 5.) The letter provided Midland's identity and noted that it was an assignee of GE. (Id.) The letter further stated the total due on the account was $9,180.40.[1] (Id.) According to Matin, FF&G also attempted to contact her at her residence via telephone on multiple occasions. (Pltf.'s Dep. Tr. 33:18-34:11.) To the best of her recollection, she never returned any of FF&G's calls. (Id. at 34:12-18.) Matin did, however, send a letter to Midland alleging that it

---

[1] We have not included the full text of the letter in this Opinion because it is not germane to any of Matin's claims.

had placed "derogatory information" on her credit report and that the outstanding balance was "comprised largely of interest, finance charges, penalties or other fees not justified by any existing contract." (Id. at 39:19-40:12, 40:13-22.)

The event that triggered the instant litigation is a February 14, 2011 phone call placed by Matin to FF&G. (Id. at 58:18-21.) On that date, Matin called FF&G from her personal cell phone while she was in her lawyer's office and her lawyer used the firm's equipment to record the call. (Id. at 69:8-72:21.) Matin spoke with Mr. Forrest Willome ("Willome"), an employee of FF&G. (Id., Ex. 6.) She began the conversation by indicating that she was "calling for [her] status." (Id.) Willome located Matin's file and asked how he could help her. (Id.) Matin responded that she had been unemployed for over a year and that she could not afford to pay the debt. (Id., Ex. 6.) Matin then asked if she could dispute the debt. When asked what the dispute was, Matin informed Willome that she believed the balance of the debt to be excessive and inflated. (Id.) Willome then asked Matin how much she could afford to pay and indicated that it was possible for her to settle for less than the full amount of the debt. (Id.) Matin stated that she could not even afford to pay half of the outstanding amount in her current financial state. (Id.) Willome advised that he was unable to stop the collection process. (Id.) Matin then changed course and asked whether FF&G had sent her a letter and asked if FF&G had retained a copy of it. (Id.) Willome responded in the affirmative. (Id.) Next, Matin asked if FF&G had reported her account to credit bureaus, whereupon Willome informed her that FF&G is a law firm that does not report to credit bureaus. (Id.) Finally, Matin asked, "Well, are you . . . or is your company going to file suit against me or not?" (Id.) Willome responded, "Well, yes ma'am but we'd like to avoid that." (Id.) When asked to repeat his answer, he responded, "Yes, we are but

3

we'd like to avoid that if you can settle it." (Id.) Matin stated that she needed time "to think about it," and promptly ended the conversation. (Id.)

On February 16, 2011, two days after making the phone call, Matin filed a writ of summons claiming that false or misleading statements had been made because FF&G had not yet filed suit against her. Matin filed a complaint on March 15, 2011, in the Court of Common Pleas of Montgomery County. (Not. Of Removal, Ex. A, Compl.) Therein, Matin alleges that FF&G threatened to take legal action against her without ever intending to follow through on such threats in violation of the FDCPA. On April 13, 2011, FF&G removed the case to federal court. FF&G submitted the instant Motion on September 13, 2011 arguing that Matin's claims must be dismissed because she can present no evidence that the debt is a debt as defined under the FDCPA ("consumer debt") or that FF&G engaged in any conduct prohibited by the FDCPA. Thereafter, on September 14, 2011, FF&G re-submitted its Motion with a Corrected Statement of Undisputed Material Facts. Despite the Corrected Statement of Undisputed Material Facts, FF&G's arguments remained the same. On October 7, 2011, Matin submitted her Response arguing that there is a genuine issue of material fact regarding the nature of the debt because Matin received "personal invoices for the alleged underlying debt." (Pltf.'s Resp. Br. 1.) Matin further argues that FF&G did falsely threaten to sue because FF&G has yet to file suit against her and that a managing representative from FF&G testified at his deposition that her account had not been reviewed for legal action by an attorney. (Id. at 1-2.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) states that summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter

of law." See Hines v. Consol. Rail Corp., 926 F.2d 262, 267 (3d Cir. 1991). The Court asks "whether the evidence presents a sufficient disagreement to require submission to the jury or whether . . . one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is material if it could affect the outcome of the suit after applying the substantive law. Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'" Compton v. Nat'l League of Prof'l Baseball Clubs, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358, 1362-63 (3d Cir. 1992). "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion. Tziatzios v. United States, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996). If the court determines that there are no genuine issues of material fact, then summary judgment will be granted. Celotex, 477 U.S. at 322.

**III.   DISCUSSION**

    **A.   Matin Fails to Demonstrate the Nature of the Debt**

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA proscribes a host of activities, including using any false, deceptive, or misleading representation or means in connection with the collection of any debt. 15 U.S.C. § 1692e(5). Section 1692e(5) specifically prohibits the threat to take any action that cannot legally be taken or that is not intended to be taken. Id. The FDCPA also prohibits the use of unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692f.

"A threshold requirement for application of the FDCPA is that the prohibited practices are used in an attempt to collect a 'debt.'" Raabe v. Rauch-Milliken Int'l, Inc., No. 10-2458, 2010 WL 2533288, at *1 (E.D. Pa. June 24, 2011) (quoting FTC v. Check Investors, Inc., 502 F.3d 159, 167 (3d Cir. 2007)). The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692(a)(5). Here, FF&G correctly argues that Matin cannot demonstrate that the debt was incurred for personal, family, or household purposes.

Matin responds to FF&G's challenge to the nature of the debt in a single, terse paragraph. In that paragraph, Matin argues that she has "clearly presented evidence that would create a

genuine issue of material fact" concerning whether the debt was a "consumer debt for purposes of the FDCPA." (Pltf.'s Resp. Br. 1.) The sole piece of evidence produced by Matin is an account statement from GE, closing date November 3, 2007. (Id., Ex. A.) That statement is addressed to Matin at her home address and includes the amount of the previous balance, the amount of the new balance, the amount of her last payment, the interest rate, and other information. However, we are unable to determine the type of purchases that comprised the balance from this account statement. The statement does not provide an itemized list of purchases, and, even if it did provide such a list, we would still lack sufficient information to determine whether the purchases were made for primarily personal, family, or household purposes. This is especially the case because Matin herself is unable to recall what purchases she made on her credit card and the purpose for those purchases. The only inferences that we are able to draw from the account statement is that GE sent a statement to Matin as an individual at her home address.

To the extent that Matin argues that FF&G's attempt to collect the debt from her personally establishes that the debt is a qualifying debt under the FDCPA, courts sitting in this district have already considered this issue and have determined that "[a] debt collector's treatment of an obligation is irrelevant to an inquiry regarding the nature of the obligation itself." Anderson v. AFNI, Inc., No. 10-4064, 2011 WL 1808779, at *14 (E.D. Pa. May 11, 2011) (citing Slenk v. Transworld Sys., Inc., 236 F.3d 1072, 1076 (9th Cir. 2001)); see also Raabe, 2010 WL 2533288. In Anderson v. AFNI, Inc., the debt collector defendant moved for summary judgment arguing that the debtor plaintiff had failed to produce any evidence relating to the purpose of the underlying debt and, therefore, had failed to produce evidence that the delinquent account was a

debt as defined by the FDCPA. Id. at *13. The plaintiff argued that several factors established that the debt was for personal, family, or household purposes, including: (1) the debts were all being collected from an individual person; (2) the addresses associated with the debts on the debt collector's records were all residential addresses; and (3) the debt collector admitted that it treated the collection of the debts as consumer debts. Id. As such, the plaintiff argued that, drawing all inferences in her favor, there existed a genuine issue of fact regarding the nature of the debts. Id.

The court rejected the debtor's arguments finding that individuals often carry on commercial activities from residential settings and that the debt collector could have treated the debtor's obligations as consumer debts as an exercise of abundant caution to protect itself from FDCPA liability. Id. at *14 (citing Lang v. Winston & Winston, P.C., 2001 WL 641122, at *5 n.1 (N.D. Ill. June 4, 2001)). Accordingly, the court held that "[n]o reasonable jury could find, based on the evidence [the plaintiff had] produced, that the obligation at issue" was a qualifying debt under the FDCPA. Id. Specifically, the court held that "[a] residential address and an individual debtor - on inferences alone - do not a consumer debt make, even applying the grace we are obliged to extend." Id.

We agree with the court's decision in Anderson and we will, therefore, grant FF&G's motion for summary judgment because we find that Matin had failed to establish a critical element of her claim, namely, that the debt is a consumer debt as required by the FDCPA. Because we find that Matin has failed to meet this threshold requirement, we need not consider

whether she has demonstrated that FF&G violated 15 U.S.C. § 1692e(5).[2]

    An appropriate Order follows.

---

[2] In her Complaint, Matin claims that FF&G's conduct also violated 15 U.S.C. § 1692f. (Compl. ¶ 22.) However, the parties have only disputed the claim under 15 U.S.C. § 1692e. Despite this apparent oversight, our decision disposes of the claim under both statutory provisions because Matin has failed to make a showing sufficient to establish that the debt is a consumer debt, a threshold requirement for all FDCPA claims.